Allen J. CAMPBELL et al.

v.

NORFOLK & DEDHAM MUTUAL FIRE INSURANCE COMPANY.

No. 95–294–Appeal.

Supreme Court of Rhode Island.

Sept. 17, 1996.

Frederick A. Costello, Warwick, for Plaintiffs.

J. Scott Kilpatrick, Providence, for Defendant.

## OPINION

PER CURIAM.

The plaintiffs, Allen J. and Val B. Campbell, appeal from a summary judgment entered in the Superior Court in favor of the defendant, Norfolk & Dedham Mutual Fire Insurance Company. Counsel for both parties appeared before us at a motion-calendar hearing to show cause why the issue raised in this appeal should not be summarily decided. We conclude that cause has not been shown and that the question presented should be decided without further briefing and argument.

The case turns on whether the homeowner's insurance policy issued by defendant to plaintiffs covers damage to plaintiffs' home caused by the collapse of a basement wall. Relying upon the pleadings, depositions, and answers to interrogatories submitted by the parties, the motion justice concluded that an exclusion in the homeowner's policy was clear and unambiguous and operated to prevent plaintiffs from recovering for loss to the home's foundation unless that loss had been caused by the "falling in, loss of shape, or reduction to flattened form or rubble of the building." Because we find the policy's exclusionary clause to be ambiguous, a genuine issue of fact remains to be resolved by the jury. Accordingly, we vacate the summary judgment, and for the reasons set forth below, we remand the case for a trial on the merits.

In 1989 plaintiffs purchased a single-family dwelling at 14 Aberdeen Street in West Warwick, Rhode Island. Approximately three and a half years later, a nineteen-foot section of the thirty-two-foot foundation wall collapsed and "crumbled into rubble in the basement." As a direct result of the collapse, the floors became unlevel and continued to shift, and the home was rendered uninhabitable. The plaintiffs contacted defendant to report the damage, and defendant, in turn, informed them that coverage would not be provided on the basis of exclusions for loss caused by earth movement or ground water.

The plaintiffs then hired a licensed engineer who reported that "water had no part in the collapse" of the basement wall. (In their complaint, plaintiffs contend that hidden decay caused the wall's collapse.) After receiving this report, defendant continued to deny recovery, but it now shifted ground and contended that the collapse of a basement wall

was not a covered loss under the terms of the insurance policy.

The subject policy states in pertinent part: "Collapse. We insure for direct physical loss to covered property involving collapse of a building or *any part of a building* caused only by one or more of the following:

" * * *

"b. hidden decay;

" * * *

"Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, *foundation,* * * * is not included under items b, c, d, e, and f unless the loss is a direct result of the collapse of a building.

"Collapse does not include settling, cracking, shrinking, bulging or expansion." (Emphasis added.)

The plaintiffs assert that this provision is ambiguous because it provides coverage for the collapse of a building or *any part of a building* that is due to hidden decay, but it then excludes coverage for loss to the home's foundation except when that loss is caused by the collapse of a building, of which a basement foundation is an integral part.

The defendant claims that the policy's language could not be clearer: loss to a foundation will be covered only if it is the direct result of the collapse of the entire building. Counsel for defendant argued to the motion justice that "while they [the insurance company] want to cover you for a catastrophic loss where you lose your *entire* commercial building or your *entire* home, they're not going to cover you for when the wind blows the awning off or when the basement wall collapses."

■ An exclusion from coverage in a homeowner's insurance policy must be clear and unambiguous. *See Massasoit Housing Corp. v. Town of North Kingstown,* 75 R.I. 211, 217, 65 A.2d 38, 40 (1949). If the terms of an insurance contract are subject to more than one reasonable interpretation, the policy will be construed in favor of the insured to avoid forfeiture. *Mallane v. Holyoke Mutual Insurance Co.,* 658 A.2d 18, 20 (R.I.1995);

*Massasoit Housing Corp.,* 75 R.I. at 217, 65 A.2d at 40. In determining whether a contract is clear, this court views the policy in its entirety and gives to its language its "plain, ordinary and usual meaning." *Amica Mutual Insurance Co. v. Streicker,* 583 A.2d 550, 552 (R.I.1990) (quoting *Sentry Insurance Co. v. Grenga,* 556 A.2d 998, 999 (R.I.1989)). "The test to be applied," we have said, "is not what the insurer intended by his [or her] words, but what the ordinary reader and purchaser would have understood them to mean." *Pressman v. Aetna Casualty and Surety Co.,* 574 A.2d 757, 760 (R.I.1990) (quoting *Elliott Leases Cars, Inc. v. Quigley,* 118 R.I. 321, 326, 373 A.2d 810, 812 (1977)).

■ In the case at bar, plaintiffs had reason to believe that they were purchasing a multiperil contract of insurance that would cover the "collapse of a building or *any part*" thereof caused by "hidden decay." (Emphasis added.) Given the initial reference in the policy to the collapse of a building as including "any part" thereof, the provision excluding loss to a foundation "unless the loss is a direct result of the collapse of a building" does not necessarily mandate the complete and total destruction of plaintiffs' dwelling before coverage is triggered for loss to the foundation. If the insurer intended such a result, it could have easily stated that loss to a foundation is excluded unless caused by the collapse of the *entire* building. Further, the policy itself fails to define what constitutes the collapse of a building except to say that it is not "settling, cracking, shrinking, bulging or expansion." Here, plaintiffs do not contend that the basement wall settled, cracked, bulged, or expanded, but that a large part of it crumbled into a pile of rubble. Consequently, the motion justice erred when she concluded that "[s]ince the damage to plaintiffs' home consists of cracked walls and unleveled floors, the requisite 'collapse' of the building has not occurred." Moreover, any losses to the upper part of plaintiffs' home caused by the foundation's partial collapse are not among the enumerated excluded losses set forth in the policy. Thus, to the extent that there were any cracked walls and unlevel floors in the upper part of the house owing to the

foundation's collapse, these losses would be covered.

■ The issue, then, becomes whether it is reasonable for the purchaser of an insurance contract to believe that the collapse of a nineteen-foot section of a thirty-two-foot basement wall that eventually renders this home uninhabitable constitutes a "collapse of a building." This court has never defined these terms, and both parties sharply dispute their meaning.

■ In construing insurance clauses similar to the one here, many courts have found that use of the word "collapse" in an insurance policy does not require the total destruction of a building because to require a party to await complete destruction before losses will be covered frustrates an insured's understanding of the insurance agreement and subverts his or her duty to mitigate damages and to avoid economic waste. *See Ercolani v. Excelsior Insurance Co.,* 830 F.2d 31, 34 (3d Cir.1987); *Fidelity and Casualty Co. of New York v. Mitchell,* 503 So.2d 870, 871 (Ala.Civ.App.1987); *Whispering Creek Condominium Owner Association v. Alaska National Insurance Co.,* 774 P.2d 176, 180 (Alaska 1989); *Beach v. Middlesex Mutual Assurance Co.,* 205 Conn. 246, 252–53, 532 A.2d 1297, 1300–01 (1987); *Auto Owners Insurance Co. v. Allen,* 362 So.2d 176, 177–78 (Fla.Dist.Ct.App.1978); *Nationwide Mutual Fire Insurance Co. v. Tomlin,* 181 Ga.App. 413, 415–16, 352 S.E.2d 612, 615 (1986); *Government Employees Insurance Co. v. DeJames,* 256 Md. 717, 724, 261 A.2d 747, 751 (1970); *Guyther v. Nationwide Mutual Fire Insurance Co.,* 109 N.C.App. 506, 511–14, 428 S.E.2d 238, 241–42 (1993); *see generally* Annotation, *What Constitutes "Collapse" of a Building Within Coverage of Property Insurance Policy,* 71 A.L.R.3d 1072 (1976).

Moreover, to read the exclusionary clause as defendant suggests would lead to unreasonable results. For instance, if the collapse of the basement's foundation was the cause of the building's complete destruction, the insured could collect for loss sustained to the upper portion of the dwelling but not for damage to the foundation because loss to the foundation was the "direct result" of the falling in of the foundation itself and not the direct result of the falling in of the entire building. In effect, to require that any loss to a foundation be recoverable only if it results from the complete collapse of a building would render illusory as applied to the foundation the earlier policy provision purporting to insure against the risk of "collapse of a building or any part of a building." *See Jerry's Supermarkets, Inc. v. Rumford Property and Liability Insurance Co.,* 586 A.2d 539, 540 (R.I.1991); *Pressman,* 574 A.2d at 759; *see also Elliott Leases Cars, Inc.,* 118 R.I. at 329, 373 A.2d at 813.

In presenting its argument to the court, the defendant concedes that a foundation is a part of a building. Indeed, a foundation is defined as "the lowest division of a building, wall, or the like, usually of masonry and partly or wholly below the surface of the ground." Random House Dictionary of the English Language 756 (2d unabr. ed. 1987). It is our opinion, therefore, that an ordinary purchaser of the policy could have reasonably understood the provisions of this policy as insuring against the type of risk and loss encountered here. If upon review of the contested terms of an insurance contract, this court finds ambiguity in any of the material terms employed, a question of fact exists that must be resolved by the finder of fact, which in this case is the jury. *Clark–Fitzpatrick, Inc. v. Gill,* 652 A.2d 440, 443 (R.I.1994).

■ For the reasons stated, we sustain the plaintiffs' appeal, vacate the summary judgment, and remand the papers of the case to the Superior Court for further proceedings consistent with this opinion.