565 S.E.2d 306

**OCEAN WINDS COUNCIL OF CO–OWNERS, INC., Plaintiff,**

v.

**AUTO–OWNER INSURANCE COMPANY, Defendant.**

No. 25485.

Supreme Court of South Carolina.

Heard April 3, 2002.

Decided June 17, 2002.

W. Jefferson Leath, Jr. and Timothy W. Bouch, both of Leath, Bouch & Crawford, L.L.P., of Charleston; and W.H. Bundy, Jr., of Smith, Bundy, Bybee & Barnett, P.C., of Mt. Pleasant, for plaintiff.

Robert H. Hood, Robert H. Hood, Jr., and Deborah H. Sheffield, all of Hood Law Firm, L.L.C., of Charleston, for defendant.

Justice MOORE.

We accepted this certified question to interpret a property insurance policy providing coverage for "risks of direct physical loss involving collapse of a building or any part of a building."

## FACTS

Plaintiff (Ocean Winds) seeks payment from defendant (Insurer) under collapse coverage in its policy which provides:

5. ADDITIONAL COVERAGES

d. COLLAPSE

We will pay for loss or damage caused by or resulting from risks of direct physical loss involving collapse of a building or any part of the building caused only by one or more of the following:

. . .

(2) hidden decay;

(3) hidden insect or vermin damage

. . .

Collapse does not include settling, cracking, shrinkage, bulging, or expansion.

Ocean Winds alleges its buildings have suffered "substantial structural impairment" from hidden decay as a result of water infiltration and termite damage although the buildings have not yet fallen to the ground. Insurer contends coverage is not triggered until the buildings have actually fallen to the ground. Ocean Winds commenced this action in federal district court which certified this question to us:

In order to trigger coverage [under the policy quoted above], is it required: 1) that the building or part of the building fall to the ground or be reduced to flattened rubble; or 2) that the building manifest substantial structural impairment, but has not yet fallen to the ground or been reduced to flattened rubble?

## ISSUE

When is coverage triggered under the policy clause providing coverage for "risks of direct physical loss involving collapse?"

## DISCUSSION

■ As noted by several authorities, the word "collapse" as used in property loss insurance policies has spawned much litigation. *See generally* Annot., *What Constitutes "Collapse" of a Building Within Coverage of Property Insurance Policy,* 71 A.L.R.3d 1072 (1976). The modern trend is to find the word "collapse" ambiguous and construe it to mean a "substantial impairment" of the building's structural integrity. Courts finding the word unambiguous, on the other hand, have generally construed it to mean "a falling in, loss of shape, or reduction to flattened form or rubble." *See, e.g., American Concept Ins. Co. v. Jones,* 935 F.Supp. 1220 (D.Utah 1996); *Fantis Foods, Inc. v. North River Ins. Co.,* 332 N.J.Super. 250, 753 A.2d 176 (2000); *Rankin v. Generali—U.S. Branch,* 986 S.W.2d 237 (Tenn.App.1998) *and cases cited therein.* In light of this conflict, the federal district court asks this Court to decide which approach is appropriate.

First, it is important to note that most cases involve simply the use of the single word "collapse" and not the entire phrase at issue here: "risks of direct physical loss involving collapse." As noted by one of the few courts to construe this exact phrase, it is even more ambiguous than the use of the word "collapse" alone. *Doheny West Homeowners' Ass'n. v. Am. Guar. & Liab. Ins. Co.,* 60 Cal.App.4th 400, 405, 70 Cal. Rptr.2d 260 (1997).

Courts construing this phrase have taken various approaches. Three have construed it to mean collapse must be imminent. *Whispering Creek Condominium Owner Ass'n v. Alaska Nat'l Ins. Co.,* 774 P.2d 176 (Alaska 1989); *Doheny*

*West, supra; Fantis Foods, supra.* "Imminent" means collapse is "likely to happen without delay; impending or threatening" and requires a showing of more than substantial impairment. *Doheny West,* 60 Cal.App.4th at 406, 70 Cal. Rptr.2d 260. Two courts have construed the phrase to mean "substantial impairment," the most lenient standard, *see Island Breakers v. Highlands Underwriters Ins. Co.,* 665 So.2d 1084 (Fla.App.1995); *Rankin, supra;* and two have required actual collapse, the most stringent. *Fidelity and Cas. Co. of New York v. Mitchell,* 503 So.2d 870 (Ala.Civ.App.1987); *Heintz v. United States Fidelity and Guar. Co.,* 730 S.W.2d 268 (Mo.App.1987).

In our view, to construe the phrase *"risks* of direct physical loss *involving* collapse" as requiring actual collapse is too narrow an interpretation. This phrase is more expansive than the word "collapse" and appears to cover even the threat of loss from collapse. *See Doheny West, supra.* Further, as noted by courts rejecting the actual collapse standard, such an interpretation encourages an insured to neglect repairs and allow a building to fall, which is economically unsound and contrary to the insured's duty to mitigate damages. *See American Concept, supra; Royal Indem. Co. v. Grunberg,* 155 A.D.2d 187, 553 N.Y.S.2d 527 (1990).

■ On the other hand, as courts rejecting the "substantial impairment" standard have noted, collapse coverage should not be converted into a maintenance agreement by allowing recovery for damage which, while substantial, does not threaten collapse. *See Doheny West, supra; Clendenning v. Worcester Ins. Co.,* 45 Mass.App.Ct. 658, 700 N.E.2d 846 (1998).

■ We find a requirement of imminent collapse is the most reasonable construction of the policy clause covering "risks of direct physical loss involving collapse." We define imminent collapse to mean collapse is likely to happen without delay. This construction protects the insured without distorting the purpose of the clause to protect against damage from collapse. The policy at issue therefore requires proof of imminent collapse for coverage to be triggered.

**CERTIFIED QUESTION ANSWERED.**

TOAL, C.J., WALLER and BURNETT, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent. In my opinion, the policy as written is unambiguous, and requires collapse of a building to trigger coverage.

"Collapse" means "1. to fall down or fall to pieces, as when supports or sides fail to hold; cave in; shrink together suddenly[.] 2. To break down suddenly; fail; give way...." *Webster's New World College Dictionary* 286 (Michael Agnes ed., 4th ed., McMillan USA 1999). While there can be little doubt when a building or a part thereof has collapsed, in my opinion there could be considerable debate as to when "collapse is likely without delay." The majority's construction of the policy replaces the unambiguous coverage-triggering event, collapse, with the ambiguous phrase "collapse is likely without delay." I would opt for a dictionary definition of collapse, and require, as does the plain language of the policy, actual collapse to trigger coverage. Should an insured desire coverage for damage which substantially impairs the structural integrity of a building, but does not result in collapse, she can contract for such coverage.