**MASONIC TEMPLE ASSOCIATION OF CRAWFORDSVILLE,**
**Appellant–Plaintiff,**

v.

**INDIANA FARMERS MUTUAL INSURANCE CO., Appellee–Defendant.**

**No. 54A05–0203–CV–118.**

Court of Appeals of Indiana.

Nov. 21, 2002.

Rehearing Denied Jan. 31, 2003.

---

James E. Ayers, Wernle, Ristine & Ayers, Crawfordsville, IN, Attorney for Appellant.

Mark R. Smith, Smith Fisher Maas & Howard, Indianapolis, IN, Attorney for Appellee.

### OPINION

BAILEY, Judge.

#### Case Summary

Masonic Temple Association of Crawfordsville ("Masonic Temple") brings an interlocutory appeal of partial summary judgment in favor of Indiana Farmers Mutual Insurance Company ("Indiana Farmers") on Masonic Temple's tort claims for breach of an insurer's duty to deal in good faith and punitive damages. We affirm.

#### Issue

 Masonic Temple designates four issues, which we consolidate and restate as follows: whether the trial court properly granted partial summary judgment on Masonic Temple's tort claims.[1]

---

1. In its appellee's brief, Indiana Insurance designates a separate issue, not addressed by the interlocutory order certified for appeal, of whether the trial court abused its discretion in denying a motion to strike the following

### Facts and Procedural History

During late 1999 and early 2000, the City of Crawfordsville, Indiana was constructing a new Police Department building adjacent to the north side of the Masonic Temple. In mid-December, the construction crew undertook excavation to a depth of six to seven feet deeper than the footing of the Masonic Temple. Concrete was poured in late December, before a period of cold weather and the holidays, during which the excavation area apparently remained exposed and lacking a retaining wall to provide soil support. A rainstorm occurred on February 17 and 18, 2000.

On February 19, 2000, the Secretary of the Masonic Temple discovered cracks in the walls and ceiling of the kitchen. Further investigation revealed damage to the exterior brick walls and throughout every level of the building, including the basement. The Masonic Temple implemented emergency procedures to prevent further deterioration or collapse.

On February 19, 2000, Masonic Temple notified its insurer, Indiana Farmers, of the loss.[2] On March 9, 2000, Indiana Farmers retained Donan Engineering Co., Inc. ("Donan") to investigate the cause of damage to the temple. Donan's findings were summarized in a written report as follows:

> The soil around and under the Masonic Temple building foundation was not supported adequately for excavation close to and below the elevation of the foundation.

> The rainwater moistened and "lubricated" the soil under the foundation, allowing the horizontal force component to "squeeze" the soil out from under the footing.

> As the soil bearing capacity was lost under the foundation, the footing and foundation walls cracked and settled, both in the vertical direction and in the lateral direction, as evidenced by the separation and shifting of the walls.

> The sudden shift or movement of the foundation cracked the east wall and allowed the north wall to move laterally, as evidenced by the pulling of the first floor joists out of their "pocket" in the basement walls. This sudden movement also damaged the plaster on walls and ceilings throughout the building.

> There is no evidence that the remodeling currently being done or the condi-

---

portion of the affidavit Leroy Utshig ("Utshig"), Masonic Temple's expert witness:

> That in my professional opinion, the proximate cause of loss is any cause that, through an unbroken chain of events, results in the loss being sustained. That the chain of events was: Excavation, Failure to properly shore and support the adjacent structure, damaged building.
> That in my professional opinion, Indiana Farmers' reliance on the exclusionary language related to earth movement is improper and in bad faith.

(App.230.) Trial Rule 56(E) requires that affidavits supporting or opposing summary judgment shall set forth such facts as would be admissible in evidence. Indiana Farmers claims that Utshig, an insurance expert without a law degree, is not qualified to offer an admissible expert opinion on proximate cause or bad faith. Here, the trial court granted partial summary judgment in favor of Indiana Farmers, and it is thus apparent that the trial court did not rely upon the averments of Utshig to the detriment of Indiana Farmers. Issues which are unnecessary to a full and fair determination of an appeal will not be addressed. *Carson v. Ross*, 509 N.E.2d 239, 244 (Ind.Ct.App.1987). It is therefore unnecessary for this Court to evaluate Utshig's qualifications as an expert witness.

2. Indiana Farmers issued Commercial Lines Insurance Policy No. 29–20–455319 to Masonic Temple, with an effective coverage date from October 24, 1999 to October 24, 2000 (hereinafter "the policy").

tion of the building prior to this incident had any detrimental contributing effect. (Appellee's App. 113.)

On June 23, 2000, Indiana Farmers denied the Masonic Temple's claim, citing an "earth movement" exclusion and further claiming that the loss did not fall within additional "collapse coverage" because the building did not totally collapse.[3] The parties subsequently communicated by letter, each citing case law allegedly favorable to its proposed definition of "earth movement." On June 28, 2000, Indiana Farmers offered in writing to initiate a declaratory judgment action, contingent upon the submission of a joint stipulation of facts to the trial court.

On August 4, 2000, the Masonic Temple filed its Complaint for Declaratory Relief, asserting that its loss was due to faulty construction excavation methods and requesting that the trial court determine its right to coverage under the Indiana Farmers policy. Farmers filed third party complaints against the contractors, engineers and architects involved in the City of Crawfordsville construction project. On May 22, 2001, the Masonic Temple filed an amended complaint including a tort claim, alleging that the denial of its claim was in bad faith. Indiana Farmers counterclaimed seeking attorney fees. On July 25, 2001, Indiana Farmers moved for partial summary judgment on the Masonic Temple's bad faith claim. Hearing was held on January 25, 2002. On February 5, 2002, the trial court granted partial summary judgment in favor of Indiana Farmers, in pertinent part as follows:

> The Court now being duly advised finds that pursuant to Indiana Trial Rule 56, there are no genuine issues of material fact on Masonic Temple Association of Crawfordsville's claim for bad faith and

for punitive damages and that Indiana Farmers Mutual Insurance Company is entitled to judgment as a matter of law upon these two issues. The Court finds that this matter should proceed upon the question of insurance coverage, but that the claims for bad faith and punitive damages should be dismissed.

(App. 264–65.) On February 21, 2002, the trial court certified its order for interlocutory appeal. The Masonic Temple now appeals.

## Discussion and Decision

### I. Summary Judgment Standard of Review

Indiana Trial Rule 56(C) provides that a party seeking summary judgment must show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. The movant must designate sufficient evidence to prima facie eliminate any genuine factual issues, and once the movant has done so, the burden shifts to the nonmovant to come forth with evidence to the contrary. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 461 (Ind.2002). The court must accept as true those facts alleged by the nonmoving party, construe the evidence in favor of the non-movant, and resolve all doubts against the moving party. *Id.*

On appeal, this Court will assess the trial court's decision to ensure that the parties were not improperly denied their day in court. *Id.* A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue.

---

**3.** Indiana Farmers contends that the damage was properly characterized as "settling, cracking, shrinkage, bulging or expansion," a non-covered event. (Appellee's App. 36.)

*Cansler v. Mills*, 765 N.E.2d 698, 701 (Ind. Ct.App.2002). Summary judgment should not be granted when it is necessary to weigh the evidence. *Community Care Centers, Inc. v. Hamilton*, 774 N.E.2d 559, 564 (Ind.Ct.App.2002).

## II. Bad Faith Standard

■■ Indiana law has long recognized a legal duty, implied in all insurance contracts, for the insurer to deal in good faith with its insured. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind.2002) (citing *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind.1993)). This obligation of good faith and fair dealing includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in payment; (3) deceiving the insured; and (4) exercising an unfair advantage to pressure an insured into settlement of his claim. *Erie*, 622 N.E.2d at 519. A cause of action will not arise every time an insurance claim is denied. *Freidline* at 40. A good faith dispute about whether the insured has a valid claim will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith. *Id.* However, an insurer that denies liability knowing there is no rational, principled basis for doing so has breached its duty. *Id.* To prove bad faith, the plaintiff must establish, with clear and convincing evidence, that the insurer had knowledge that there was no legitimate basis for denying liability. *Id.* Tort damages for the breach of the duty to exercise good faith will, in most instances, be coterminous with those recoverable in a breach of contract action. *Erie*, 622 N.E.2d at 520.

## III. Punitive Damages Standard

■■ The Indiana Supreme Court has recognized an independent tort for the breach of an insurer's obligation to exercise good faith, upon which punitive dam-ages may be based. *Id.* However, proof that a tort was committed is not sufficient to establish the right to punitive damages. *Id.* The standard for awarding punitive damages for the commission of a tort remains unchanged. *Id.* Punitive damages may be awarded only if there is clear and convincing evidence that the defendant acted with malice, fraud, negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing. *Id.*

## IV. The Policy Provisions

In denying Masonic Temple's claim and in moving for partial summary judgment, Indiana Farmers relied on two policy provisions, the first of which is designated CAUSES OF LOSS—SPECIAL FORM, Form CP 1030 SECTION B.1.b(1), and provides as follows:

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

b. Earth Movement

(1) Any Earth Movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting.

(Appellee's App. 24.) The second policy provision invoked by Indiana Farmers, CAUSES OF LOSS—SPECIAL FORM, Form CP 1030 SECTION D.1.f, provides in pertinent part:

1. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this Coverage Form if the collapse is caused by one or more of the following:

g. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

(Appellee's App. at 29.)

### V. Analysis

Masonic Temple claims that the designated materials, including the report from the engineer retained by Indiana Farmers, disclose the cause of Masonic Temple's loss, namely, faulty construction excavation, and that Indiana Farmers acted in bad faith when it refused the claim because excavation is not excluded under the policy. Moreover, Masonic Temple alleges that Indiana Farmers acted in bad faith by misrepresenting the results of its investigation and relying upon decisions of other jurisdictions construing policy provisions dissimilar to those in the policy at issue. Masonic Temple contends that it will prevail at trial on its contention that the engineering report clearly revealed faulty construction as the source of the damage a predicate factual determination and should also be allowed its day in court to attempt to establish that the denial of its claim was in bad faith.

Indiana Farmers contends that, regardless of whether the trial court ultimately finds that the Policy provides coverage for Masonic Temple's loss, Indiana Farmers did not act in bad faith because there exists a rational basis for its denial of coverage. First, Indiana Farmers claims that heavy rains, a natural phenomenon, caused shifting of soil or "earth movement" under the Masonic Temple's foundation and that such "earth movement" is specifically excluded from coverage. Second, Indiana Farmers contends that the Masonic Temple building did not "collapse" so as to trigger the additional collapse coverage claimed by Masonic Temple.

Initially, we address Masonic Temple's contention that partial summary judgment on the bad faith claim is inappropriate before the declaratory judgment on the underlying claim is rendered. The trial court must still decide the merits of Masonic Temple's declaratory judgment complaint; specifically, was the cause of the temple damage a covered event for which Indiana Farmers must indemnify the Masonic Temple. The designated materials disclose a material issue of fact as to causation, with Indiana Farmers citing heavy rains and Masonic Temple citing improper excavation.[4] However, our supreme court has expressly held that a court may grant summary judgment to resolve a punitive damages bad faith claim.[5] *Hibler v. Conseco, Inc.*, 744 N.E.2d 1012, 1021 (Ind.Ct.App.2001) (citing *USA Life One Ins. Co. of Indiana v. Nuckolls*, 682 N.E.2d 534, 541 (Ind.1997)).

Generally, insurers may limit liability in any manner not inconsistent with the policy, and unambiguous exclusionary clauses will ordinarily be enforced. *Erie Ins. Co. v. Adams*, 674 N.E.2d 1039, 1041 (Ind.Ct.App.1997). However, ambiguous terms in an insurance policy will be construed against the insurer, particularly where a policy excludes coverage. *Hoosier Ins. Co. v. Audiology Foundation of America*, 745 N.E.2d 300, 307 (Ind.Ct.App. 2001), *trans. denied.* Because insurance

---

4. Affiant Michael McKeown opined that at most two feet of water collected in the excavation due to heavy rain. (App. 199.) Affiant Rogalla opined that rain did not cause the damage to the temple. (App. 199.)

5. A claim that an insurer acted in bad faith may survive the grant of summary judgment on a punitive damages claim. *Erie*, 622 N.E.2d at 520.

contracts are contracts of adhesion construed against the drafter, the insurer is bound by the plain, ordinary meaning of the words as viewed from the perspective of the insured. *Id.* Nevertheless, even where the trial court finds an exclusion to be ambiguous and construes the provision against the insurer, where the insurer is able to establish a rational basis for the denial, the insured cannot recover on a bad faith claim. *Freidline* at 40. Thus, although Indiana Farmers may ultimately be held liable to Masonic Temple under the Policy, if it established, with good faith legal argument, that a rational basis for denial of the claim exists, partial summary judgment was properly granted. *Id.* at 42–43.

■ Accordingly, we look to the designated materials to determine if Indiana Farmers negated an essential element of Masonic Temple's breach of good faith tort claim by showing that the payment dispute was in good faith. *Freidline* at 40. In reviewing a grant of summary judgment, we accept as true those facts alleged by the non-movant Masonic Temple. *Shambaugh,* 763 N.E.2d at 461. Thus, we assume that the actual cause of Masonic Temple's damage is faulty construction excavation methods and that Indiana Farm-

ers was made aware of this causation in the engineering report it obtained.

Even if the earth movement exclusion applies, if a "collapse" occurred from specified causes (including defective methods in construction), the Policy covers Masonic Temple's damage. As such, in order to deny coverage in good faith, Indiana Farmers must have rested its decision on a rational contention that earth movement as contemplated by the policy occurred AND that no collapse occurred.[6]

Indiana Farmers asserts, and Masonic Temple agrees, that no Indiana cases have specifically defined either the phrase "earth movement" or the term "collapse" contained within a commercial insurance policy. With respect to interpretations of the term "collapse," both Masonic Temple and Indiana Farmers acknowledge a split of authority in other jurisdictions. *See e.g., American Concept Ins. Co. v. Jones,* 935 F.Supp. 1220 (D.Utah 1996) (holding that a substantial structural failure short of collapse to rubble is a "collapse") and *Williams v. State Farm Fire & Cas. Co.,* 514 S.W.2d 856 (Mo.Ct.App.1974) (contemplating a "falling in, loss of shape or flattening to rubble").[7] Indiana Farmers also contends that the phrase "earth movement" appearing in policies similar to the policy here has been construed to include a

**6.** Had Indiana Farmers lacked a rational basis to believe that "earth movement" as contemplated by the Policy caused the damage, the good faith response would have been to honor the Masonic Temple claim. Likewise, had Indiana Farmers lacked a rational basis on which to dispute that a "collapse" as contemplated by the Policy occurred, the good faith response would have been to honor the claim, as "collapse" from defective construction methods is specified as an additional covered event under the "Additional Coverage—Collapse" section of the Policy. We find it to be evidence of Indiana Farmers' good faith that it elected to seek summary judgment in reliance upon two policy provisions, rather than attempting to invoke a myriad of

provisions within a commercial policy, many of which have not been specifically interpreted by the courts.

**7.** In *Ocean Winds Council of Co-Owners v. Auto–Owner Ins. Co.,* 350 S.C. 268, 565 S.E.2d 306, 307 (2002), the South Carolina Supreme Court observed: "The modern trend is to find the word 'collapse' ambiguous and construe it to mean a 'substantial impairment' of the building's structural integrity. Courts finding the word unambiguous, on the other hand, have generally construed it to mean 'a falling in, loss of shape, or reduction to flattened form or rubble.' "

movement of earth that originated because of negligence, for example, burst plumbing or faulty construction. *See Stewart v. Preferred Fire Ins. Co.*, 206 Kan. 247, 250, 477 P.2d 966 (1970) (stating in pertinent part: "For the most part the events enumerated in the [earth movement] exclusionary clause originate from the negligence or carelessness of man in failing to follow proper conservation practices.") However, Masonic Temple strenuously argues that the particular language in the instant policy has never been construed to encompass any event other than naturally occurring phenomena.

An insurer has the right to dispute coverage with its insured in good faith, especially where the coverage presents an issue of first impression, and even if it is ultimately determined that the insurer breached its contract. *Spencer v. Bridgewater*, 757 N.E.2d 208, 212 (Ind.Ct. App.2001); *Hoosier Ins. Co.*, 745 N.E.2d at 310. The proper response when an insurer questions whether an insured's claim falls within the scope of its policy coverage is to file a declaratory judgment, which Indiana Farmers offered on terms Masonic Temple rejected. *See id.*

Masonic Temple argues that Indiana Farmers' bad faith may be inferred from the absence of designated materials including relevant authority construing the "earth movement" provision in a policy identical to the policy here at issue. Masonic Temple contends that the phrase "earth movement" further qualified by the explanatory language "such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting" has uniformly been construed only to include natural phenomena. Essentially, Masonic Temple seeks to convert the "rational basis" standard in *Freidline* to a standard which requires "controlling authority." However, poor judgment and negligence do not amount to bad faith; rather, the additional element of conscious wrongdoing (dishonest purpose, moral obliquity, furtive design or ill will) must be present. *Id.*

The legal authority relied upon by Indiana Farmers does not suggest that Indiana Farmers recklessly misrepresented the status of the law to Masonic Temple in an attempt to gain an unfair advantage in the claims review process. Rather, Indiana Farmers, lacking controlling authority in this jurisdiction, interpreted the persuasive authority of other jurisdictions in a light most favorable to exclusion. For example, in construing *West v. Umialik Ins. Co.*, 8 P.3d 1135 (Alaska 2000), Indiana Farmers claims that a "lead-in clause" in a policy excluding coverage for "earth movement" was applied to a manmade cause of the earth movement. Although not construing the same policy language under similar circumstances, the Court observed in dicta: "Although the earth movement exclusion is not necessarily limited to strictly natural events, it does not include perils that originate from insured improvements." *Id.* at 1142. While the interpretation most favorable to Indiana Farmers may or may not ultimately be adopted as the law in this state, there is a "rational basis" for Indiana Farmers' position.

Indiana law is clear that even though an insurer has a right to dispute coverage, the methodology employed may give rise to a bad faith claim. *Hoosier Ins. Co.*, 745 N.E.2d at 310. Here, Masonic Temple's contention in support of bad faith methodology is the allegation that Indiana Farmers misread the engineering report it solicited, interpreting the report in a manner favorable to its claim denial, and misconstrued the caselaw of other jurisdictions. We do not conclude that—assuming the truth of these allegations—

Indiana Farmers' conduct evinces conscious wrongdoing or was so egregious that the factfinder could award punitive damages. Although it may have been advisable, Indiana Farmers was not required to seek judicial determination of issues of first impression prior to claim denial. To avoid liability for acting in bad faith, Indiana Farmers was required to make its coverage decision in good faith and upon a rational basis. Indiana Farmers established that its claim denial rested upon a rational basis and thus negated an element of Masonic Temple's bad faith claim. The trial court therefore properly granted partial summary judgment.

Affirmed.

SULLIVAN and MATHIAS JJ., concur.